UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
DANIEL BRECHER, SCOTT SHORT,                    :
CHAD TAYLOR, JENNIFER MURPHY,                   :
PAUL KOCH and MARK OELFKE,                      :
individually and on behalf of all others        :
similarly situated,                             :
                                                :    09 Civ. 7359 (SHS)
                              Plaintiffs,        :
                                                :    OPINION & ORDER
              -against-                          :
                                                :
CITIGROUP INC.; CITIGROUP GLOBAL               :
MARKETS, INC.; ALAIN J.P. BELDA; C.            :
MICHAEL ARMSTRONG; KENNETH T.                  :
DERR, JOHN M. DEUTCH; RICHARD D.               :
PARSONS; ANN DIBBLE JORDAN;                     :
CITIGROUP, INC. PERSONNEL AND                   :
COMPENSATION COMMITTEE; and JOHN               :
DOES 1-30,                                      :
                                                :
                              Defendants.        :
-----------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

        Plaintiffs in this action assert federal securities claims against Citigroup, Inc. and related

defendants on behalf of a class of Citigroup employees.  The Court previously dismissed with

prejudice plaintiffs' first amended complaint and the Clerk of Court thereafter entered judgment

dismissing this action.  Plaintiffs have now moved to alter or amend the judgment pursuant to

Federal Rule of Civil Procedure 59(e) and for leave to amend pursuant to Rule 15(a).  For the

reasons that follow, the Court vacates the judgment of dismissal and grants in part and denies in

part plaintiffs' request for leave to amend.

## I.        PROCEDURAL HISTORY

        Plaintiffs allegedly purchased restricted Citigroup stock and stock options from Citigroup

as part of an employee incentive plan known as the Voluntary Financial Advisor Capital

Accumulation Program ("FA CAP"). (Proposed Second Am. Consolidated Class Action Compl. ("SAC"), Ex. A to Decl. of Mark C. Rifkin dated July 11, 2011, at ¶ 1.) Plaintiffs seek to represent a class of FA CAP participants and to assert federal securities claims against the following defendants: Citigroup Inc.; Citigroup Global Markets, Inc; six Citigroup directors that served on the board's Personnel and Compensation ("P&C") Committee—C. Michael Armstrong, Alain J.P. Belda, Kenneth T. Derr, John M. Deutch, Richard D. Parsons, and Ann Dibble Jordan, collectively the "Individual Defendants"; the P&C Committee itself, which administered the FA CAP; and thirty John Does who allegedly sold FA CAP securities. (*Id.* ¶¶ 23-33, 38.)

This action began on March 24, 2009, when plaintiff Daniel Brecher and other named plaintiffs filed suit in the United States District Court for the Southern District of California. On August 19, plaintiffs Paul Koch and Mark Oelfke filed a similar action in the same court. The Judicial Panel on Multidistrict Litigation transferred both actions to this Court as related to *In re Citigroup Inc. Securities Litigation*, No. 07 Civ. 9901. On October 8, 2009, plaintiffs filed a First Amended Consolidated Complaint ("FAC") that effectively consolidated the Brecher and Koch actions. (*See* Order dated June 1, 2011, Dkt. No. 20.)

In an Opinion & Order dated June 7, 2011, the Court dismissed the FAC with prejudice. *See Brecher v. Citigroup Inc.*, No. 09 Civ. 7359, 2011 WL 2209145, at *17 (S.D.N.Y. June 7, 2011). The Clerk of Court then entered judgment dismissing this action. (Clerk's J., Dkt. No. 22.) The instant motions to alter the judgment and for leave to amend followed. Plaintiffs have submitted a proposed Second Amended Consolidated Class Action Complaint ("SAC") with their motions. Familiarity with this Court's June 7 Opinion, as well as its opinions in related Citigroup actions, is presumed.

## II.   DISCUSSION

Federal Rule of Civil Procedure 15(a)(2) instructs courts to "freely grant leave [to amend] when justice so requires."  Yet "[a]s a procedural matter, '[a] party seeking to file an amended complaint postjudgment must first have the judgment vacated or set aside pursuant to [Rules] 59(e) or 60(b).'"  *Williams v. Citigroup Inc.*, --- F.3d ---, No. 10-538-cv, 2011 WL 3506099, at *3 (2d Cir.  Aug. 11, 2011) (quoting *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008)).  Although finality concerns generally limit the scope of Rule 59(e) relief, a court must balance concerns of finality with the liberal amendment policy of Rule 15 when assessing a postjudgment request to replead.  *Williams*, 2011 WL 3506099 at *4.  Because finality interests are minimal given the posture of this action, the liberal amendment policy of Rule 15 guides this Court's consideration of the pending motion.  *See id.* at *4-*5.

Pursuant to Rule 15, "[l]eave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'"  *Ruotolo*, 514 F.3d at 191 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Defendants emphasize plaintiffs' delay in seeking amendment and the futility of their proposed amendment as grounds for denying relief.

### A.   Delay

Plaintiffs' delay in seeking leave to amend is manifest.  The amendments in the proposed SAC reallege substantial swaths of the operative complaints in two separate consolidated class actions before this Court, *In re Citigroup Inc. Bond Litigation*, No. 08 Civ. 9522, and *In re Citigroup Inc. Securities Litigation*, No. 07 Civ. 9901.  Those consolidated complaints were filed in January 2009 and February 2009, respectively.  *See In re Citigroup Inc. Bond Litig.* ("*Bond*"), 723 F. Supp. 2d 568, 581 (S.D.N.Y. 2010); *In re Citigroup Inc. Sec. Litig.* ("*Securities*"), 753 F.

3

Supp. 2d 206, 212 (S.D.N.Y. 2010).  Plaintiffs did not avail themselves of at least three prior

opportunities to incorporate allegations from these complaints in their own pleadings as follows:

when Brecher and other named plaintiffs filed their first complaint in March 2009; when Koch

and Oelfke filed their complaint in August 2009; and when plaintiffs filed an amended

consolidated complaint in October 2009.  Nor did plaintiffs seek leave to amend after the

issuance of opinions—one in July 2010, one in November 2010—that addressed in significant

detail the sufficiency of the *Bond* and *Securities* allegations.  *See Bond*, 723 F. Supp. 2d at 568-

96; *Securities*, 753 F. Supp. 2d at 206-49.  Plaintiffs offer no excuse for now requesting to

incorporate amendments they could and should have sought much earlier.

Nonetheless, the Court will not deny plaintiffs leave to amend on account of their dilatory

conduct.  Delay is not grounds for denying amendment "absent a showing of bad faith or undue

prejudice," *Ruotolo*, 514 F.3d at 191, and defendants have made no such showing.

B.    Futility

Defendants contend the proposed SAC should be rejected as entirely futile.  An

amendment is futile if it would not withstand a Rule 12(b)(6) motion to dismiss.  *See Dougherty*

*v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002).  Thus plaintiffs'

amendments will be disallowed as futile to the extent they do not state a claim to relief that is

plausible on its face.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  As on a Rule 12(b)(6)

motion to dismiss, the Court will assume the truth of the well pleaded facts of the proposed SAC

and may consider those documents that are incorporated into the SAC by reference.  *See ATSI*

*Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

1.    *Count I: Section 12(a)(2) of the Securities Act*

Count I of the proposed SAC alleges that all defendants violated Section 12(a)(2) of the

Securities Act of 1933, 15 U.S.C. § 77*l*(a)(2), by including material misstatements or omissions

4

in Securities and Exchange Commission ("SEC") filings by Citigroup incorporated into the FA

CAP prospectus by reference.  (*See* SAC ¶¶ 15, 214-17.)  The background of these claims, which

mirror those in the *Bond* complaint, (*see* Pls. Reply Mem. in Further Supp. of Mot. to Amend

("Pls.' Reply") at 1), is discussed in detail elsewhere, *see Bond*, 723 F. Supp. 2d at 574-80.

a.       Timeliness

The parties dispute whether the Securities Act's one-year statute of limitations, 15 U.S.C.

§ 77m, bars the Section 12(a)(2) claims.  As the Court previously explained, "[w]hether

plaintiffs' Section 12(a)(2) claims are timely turns on when plaintiffs, in the exercise of

reasonable diligence, should have discovered enough information to plead that the statements

and omissions at issue in the [SAC] were misleading."  *Brecher*, 2011 WL 2209145 at *9; *cf.*

*Merck & Co., Inc. v. Reynolds*, 130 S. Ct. 1784, 1798 (2010); *City of Pontiac Gen. Emps.' Ret.*

*Sys. v. MBIA, Inc.*, 637 F.3d 169, 175 (2d Cir. 2011).[1]  Resolution of a limitations defense is

appropriate at the pleadings stage if the relevant facts "can be gleaned from the complaint and

papers . . . integral to the complaint."  *LC Capital Partners, LP v. Frontier Ins. Grp., Inc.*, 318

F.3d 148, 156 (2d Cir. 2003).

The statements and omissions at issue in the proposed SAC concern: 1) Citigroup's

purported nondisclosure throughout 2006 and through October 2007 of subprime exposure in the

form of collateralized debt obligations ("CDOs"); 2) Citigroup's nondisclosure throughout 2006

and 2007 of its supposed obligation to absorb the losses of and consolidate the assets of its

affiliated structured investment vehicles ("SIVs"); 3) Citigroup's alleged understatement of its

---

[1]       The Court, as it did in the June 7 Opinion, applies the discovery standard set forth in *Merck* and *City of Pontiac*.  Although those cases concern the statute of limitations in the Securities Exchange Act of 1934, to apply them to a Securities Act cause of action is consistent with the Securities Act's statute of limitations.  *See In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 371 (S.D.N.Y. 2011); *N.J. Carpenters Health Fund v. Residential Capital, LLC*, Nos. 08 Civ. 8781 & 08 Civ. 5093, 2011 WL 2020260, at *4 (S.D.N.Y. May 19, 2011).

5

loan loss reserves throughout 2006 and 2007; 4) Citigroup's assessments of the quality and value of its CDOs and SIV assets; and 5) Citigroup's capital adequacy.  (*See* SAC ¶¶ 176, 196, 208-13.)  Defendants incorrectly contend that the June 7 Opinion held or implies that the Section 12(a)(2) claims concerning *all* of these are untimely.  The prior opinion did not address the timeliness of claims concerning the latter three subjects.  The Court will not address their timeliness here.

The June 7 Opinion did, however, hold that claims concerning the first two subjects—exposure to CDOs and SIVs—were untimely.  *See Brecher*, 2011 WL 2209145 at *2-*3, *9-*11.  Defendants are correct that nothing in the SAC alters that conclusion.  Plaintiffs assert that the proposed SAC alleges new facts that demonstrate that they could not have discovered these claims prior to March 24, 2008, one-year before they initiated this action.  But they do not point to specific allegations supporting their position, and the proposed SAC and the documents incorporated in it actually confirm just the opposite—that plaintiffs should have discovered these claims prior to March 24, 2008.

The theory of plaintiffs' CDO exposure claims is that certain statements in Citigroup's SEC filings in 2006 and 2007 gave the impression that Citigroup had limited subprime mortgage exposure when "in reality, the Company retained the risk of loss on as much as $66 billion of undisclosed, direct exposure to subprime-backed CDOs."  (SAC ¶ 126; *see id.* ¶ 208.)  Various accounting rules also allegedly required Citigroup to disclose this CDO exposure.  (*Id.* ¶ 200.)  Plaintiffs do not dispute that Citigroup revealed these exposures prior to March 24, 2008.  (*See e.g.*, *id.* ¶¶ 84, 319, 320, 323, 677, 717.)  Plaintiffs assert—without providing factual support for their assertion—that they could not have known prior to March 24, 2008 when Citigroup accumulated this CDO exposure, and therefore could not pinpoint which of Citigroup's SEC

filings prior to November 2007 were materially false or incomplete.  The documents incorporated by reference in the SAC put the lie to this notion.  The SAC alleges that Citigroup accumulated a portion of this exposure through liquidity-put CDOs it issued in 2003 and 2005 and effectively repurchased in the summer of 2007.  (*Id.* ¶¶ 49, 57.)  Another portion of Citigroup's exposure was accumulated over time in the form of tranches of Citigroup-structured CDOs that Citigroup could not sell.  (*Id.* ¶ 59.)  But the transcript of a November 2007 Citigroup conference call with analysts (quoted in the SAC at ¶¶ 321, 584, 679-85) revealed that Citigroup had long had this exposure and how and when it was accumulated.  *See* C-Citigroup Inc. to Discuss Recent Announcements – Conference Call of Nov. 5, 2007, Final Transcript, Ex. 49 to Decl. of Susanna M. Buergel, dated Oct. 19, 2011, *In re Citigroup Inc. Sec. Litig.*, No. 07 Civ. 9901, at 1, 7-8, 12, 13, 14.  Citigroup's 2007 Form 10-K, filed February 22, 2008 (and cited in the SAC at ¶¶ 211, 323, 603), confirmed this information.  *See* Citigroup Inc. Form 10-K dated Feb. 22, 2008, at 90-91, 169; *available at* http://www.sec.gov/Archives/edgar/data/831001/ 000119312508036445/d10k.htm.  On the basis of this publicly available information, plaintiffs could have filed their CDO exposure claims by November 2007, or, at the latest, February 2008. In either event, the one-year limitations period for asserting these claims expired before March 24, 2009, rendering them untimely—as this Court previously held in its June 7 Opinion.

This reasoning also applies to plaintiffs' SIV exposure claims.  The theory of these claims is that Citigroup's SEC filings prior to December 2007 misled investors by implying that Citigroup's involvement with its SIVs was limited, when, allegedly, Citigroup had "to absorb losses on its SIVs and consolidate them in its financial statements" on account of an implicit guarantee to SIV investors.  (*Id.* ¶ 128; *see id.* ¶ 133.)  As the SAC alleges, this theory of Citigroup's obligations vis-à-vis its SIVs was repeatedly discussed in the popular press

throughout the latter months of 2007.  (*Id.* ¶¶ 136-48.)  Plaintiffs therefore could have asserted

these allegations well prior to March 24, 2008.  Even assuming these allegations state an

actionable misstatement or omission,[2] they are untimely.

> b.    Individual Defendants and the P&C Committee

Section 12(a)(2) liability attaches only to a "statutory seller," meaning one who either

"passed title, or other interest in the security, to the buyer for value," or "successfully solicit[ed]

the purchase [of a security], motivated at least in part by a desire to serve his own financial

interests or those of the securities['] owner."  *In re Morgan Stanley Info. Fund Sec. Litig.*, 592

F.3d 347, 359 (2d Cir. 2010) (alterations in original) (quoting *Pinter v. Dahl*, 486 U.S. 622, 642,

647 (1988)).  Defendants are correct that the proposed SAC fails to allege that the Individual

Defendants or the P&C Committee are statutory sellers.  There is no allegation that the

Individual Defendants or the P&C Committee passed title to plaintiffs.  Nor does the SAC allege

that the Individual Defendants or the P&C Committee solicited plaintiffs' purchases.  The SAC

therefore does not plausibly allege that the Individual Defendants or the P&C Committee are

statutory sellers.  *See In re Deutsche Telekom AG Sec. Litig.*, No. 00 Civ. 9475, 2002 WL

244597, at *4-*5 (S.D.N.Y. Feb. 20, 2002).

Plaintiffs do not attempt to rebut this conclusion.  (*See* Pls.' Reply at 7.)  They maintain

instead that the Individual Defendants may be liable as control persons of Citigroup pursuant to

Section 15 of the Securities Act, 15 U.S.C. § 77*o*.  Section 15, however, is a separate cause of

action, not a means of establishing the elements of a Section 12(a)(2) violation.  Plaintiffs do not

assert a Section 15 cause of action in the SAC.  It is of no help to them.  The SAC's failure to

---

[2]       They do not.  This Court has twice held that similar SIV allegations fail to plead an actionable misstatement or omission.  *See Bond*, 723 F. Supp. 2d at 591; *Int'l Fund Mgmt. S.A. v. Citigroup Inc.*, Nos. 09 Civ. 8755, 10 Civ. 7202, 10 Civ. 9325 &11 Civ. 314, 2011 WL 4529640, at *3 (S.D.N.Y. Sep. 30, 2011).  Plaintiffs' SIV exposure claims are futile for this additional reason.

allege adequately the Individual Defendants' or P&C Committee's statutory-seller status is dispositive; the Section 12(a)(2) claims against these defendants are futile on account of this failure.

> 2.      *Count II: Section 10(b) and Rule 10b-5 of the Securities Exchange Act*
>
> a.      Reliance

Count II of the proposed SAC alleges that Citigroup and the Individual Defendants committed securities fraud in violation of Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 promulgated thereunder.  This count requires a showing of reliance.  *See, e.g.*, *Basic Inc. v. Levinson*, 485 U.S. 224, 243 (1988).  Defendants argue the claim is futile because plaintiffs have not pled actual reliance and are not entitled to the fraud-on-the-market presumption of reliance.  This presumption generally applies "where a defendant has (1) publicly made (2) a material misrepresentation (3) about stock traded on an impersonal, well-developed (i.e., efficient) market."  *In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 481 (2d Cir. 2008).  Defendants maintain this presumption is not available to plaintiffs because they did not purchase their securities in an open, efficient market, but rather through an employee stock purchase plan.

This argument does not rebut the fraud-on-the-market presumption.  The presumption reflects the theory that "the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations."  *Basic*, 485 U.S. at 246.  Plaintiffs allegedly purchased their securities at prices derived from closing stock market prices.  (SAC ¶ 13.)  Because these purchases were potentially "susceptible to misrepresentations which distort the market price," *Deutschman v. Beneficial Corp.*, 132 F.R.D. 359, 371 (D. Del. 1990), the fraud-on-the-market presumption potentially applies.  The proposed SAC's invocation of this presumption is thus not so futile so as to warrant denying leave to amend.

b.    Individual Defendants

Another element of a Rule 10b-5 claim is scienter, i.e. that a defendant acted with a mental state "embracing intent to deceive." *Brecher*, 2011 WL 2209145 at *11. To state a claim against a particular defendant, a plaintiff must allege facts giving rise to a strong inference of scienter for that defendant. *Id.* The proposed SAC does not satisfy this requirement for the Individual Defendants. Its only specific allegations about the Individual Defendants are that all the Individual Defendants were members of Citigroup's P&C Committee, (SAC ¶¶ 25-30); that Armstrong was also chair of the board's risk and audit committee, (*id.* ¶ 110); and that Parsons was the chair of Time Warner, Inc. and had a background in banking, (*id.* ¶ 109). These meager facts fall well short of establishing the strong inference of scienter required to state a Rule 10b-5 claim. *See, e.g.*, *In re Sotheby's Holdings, Inc.*, No. 00 Civ. 1041, 2000 WL 1234601, at *7 (S.D.N.Y. Aug. 31, 2000) ("It is well established that boilerplate allegations that defendants knew or should have known of fraudulent conduct based solely on their board membership or executive positions are insufficient to plead scienter.") Plaintiffs' amended complaint cannot include the futile Rule 10b-5 claims against the Individual Defendants.

c.    Scope

Plaintiffs reallege the CDO-related Rule 10b-5 claims of the plaintiffs in the *Securities* action. (*See* SAC ¶¶ 218-925; Pls.' Reply at 1.) The Court previously held that those allegations sufficed to state claims for the period of February 2007 to April 2008, but failed to state a claim as to other periods because the allegations did not give rise to a strong inference of scienter for those periods. *See Securities*, 753 F. Supp. 2d at 234-41. To the extent plaintiffs' Rule 10b-5 claims exceed the scope of those sustained in the *Securities* opinion, they are futile for the reasons set forth in that opinion. Plaintiffs do not dispute this and the amended complaint cannot include these claims.

10

3.      *Count III: Declaratory Relief*

The third count of the proposed SAC seeks a declaratory judgment against all defendants that a release of the claims asserted herein agreed to by a subset of the putative class is "void, voidable, or otherwise invalid and unenforceable, and has no effect on their claims."  (SAC ¶ 939.)  In its June 7, 2011 Opinion, the Court dismissed the corresponding count in the FAC for failure to state a claim.  *Brecher*, 2011 WL 2209145 at *17.  To remedy that deficiency, the proposed SAC offers the following allegations:  In March 2009, in connection with a joint venture between Citigroup and Morgan Stanley, defendants required certain FA CAP participants to execute a Financial Advisor/Investor Representation Retention Agreement.  (SAC ¶ 932.)  Allegedly, the Retention Agreement was nonnegotiable and failure to execute it would result in termination of employment.  (*Id.* ¶¶ 933-34.)  Because the employees required to execute the release were "paid on an arrears basis requiring [them] to be employed by defendants at the time of payment," they would, if terminated, forfeit "wages that they had worked for and performed all tasks necessary to earn save being employed [at the time of payment] if they did not execute the Release."  (*Id.* ¶ 934.)

Plaintiffs—in a contention raised for the first time in their reply brief—argue that California law governs the enforceability of the release, and that it is unenforceable pursuant to California Labor Code § 206.5.  Even assuming California law applies, plaintiffs have not stated a claim to relief.  Section 206.5(a) in pertinent part bars employers from "requir[ing] the execution of any release of any claim or right on account of wages due."  It effectively prohibits an employer "in a dispute over wages" with an employee from "withhold[ing] wages concededly due to coerce settlement of the disputed balance."  *Reynov v. ADP Claims Servs. Grp., Inc.*, No. C 06-2056, 2007 WL 5307977, at *2 (N.D. Cal. Apr. 30, 2007) (quoting *Reid v. Overland Machined Prods.*, 359 P.2d 251, 253 (Cal. 1961)); *see Reynov*, 2007 WL 5307977 at *3 (Section

206.5 "was intended to cover situations where payments in exchange for a complete release of claims were not only indisputably owed, [but] were often far less than the indisputably owed amount."). Here, plaintiffs do not allege that defendant required the Retention Agreement in a dispute over wages or "on account of wages due." To the contrary, they allege that defendants required execution of the Retention Agreement "in connection with the proposed joint venture between Citigroup and Morgan Stanley." (SAC ¶ 932.) Moreover, the agreement provides for retention payments that "exceed any payment or thing of value to which Employee is otherwise entitled," (Financial Advisor/Investor Representation Retention Agreement at ¶ 19, Exs. 2, 3 to Decl. of Susanna M. Buergel dated Aug. 15, 2011); plaintiffs have not plausibly alleged that this is not the case. A release that provides for payment in excess of wages due does not violate Section 206.5. *See Reynov*, 2007 WL 5307977 at *3. For these reasons, plaintiffs' claim for declaratory relief is futile.

## III.   CONCLUSION

Because plaintiffs' proposed amendments are not entirely futile, the Court grants plaintiffs' Rule 59(e) motion and vacates the judgment of dismissal previously filed. The Court also grants in part and denies in part plaintiffs' request for leave to replead. Consistent with the foregoing discussion, plaintiffs shall file within fourteen days a revised version of the proposed SAC that

- omits the Individual Defendants and the P&C Committee as defendants, as all claims against them are futile;

- omits the futile declaratory relief count (Count III);

- limits the Section 12(a)(2) claims (Count I) to the subjects of CDO and SIV asset quality and valuation, alleged understatement of loan loss reserves, and capital adequacy, as the claims concerning other subjects are futile; and

- limits the Rule 10b-5 claims (Count II) to those claims sustained in the *Securities* opinion, as claims beyond the scope of the claims sustained in *Securities* are futile.

No amendments to the proposed SAC other than those just described are permitted.

Dated: New York, New York
      November 14, 2011

SO ORDERED:

Sidney H. Stein, U.S.D.J.

13