UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE CITIGROUP INC. SECURITIES LITIGATION | LEAD CASE 09 MDL 2070 (SHS) |
| DANIEL BRECHER, SCOTT SHORT, CHAD TAYLOR, JENNIFER MURPHY, PAUL KOCH, and MARK OELFKE, individually and on behalf of all others similarly situated,  Plaintiffs,  v.  CITIGROUP INC. and CITIGROUP GLOBAL MARKETS INC.,  Defendants. | 09 Civ. 7359 (SHS)  Hon. Sidney H. Stein |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED
MOTION FOR (I) PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT, (II) CERTIFICATION OF THE SETTLEMENT
CLASS AND (III) APPROVAL OF NOTICE TO THE SETTLEMENT CLASS**

JEFFREY G. SMITH
MARK C. RIFKIN
MATTHEW M. GUINEY
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**
270 Madison Ave.
New York, New York 10016
Tel:  212-545-4600
Fax: 212-545-4653

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... iv

I.      INTRODUCTION ................................................................................ 1

II.     PROCEDURAL BACKGROUND AND SUBSTANTIVE ALLEGATIONS ................. 1

        A.      Procedural Background ........................................................ 1

        B.      Substantive Allegations ....................................................... 3

III.    REASONS FOR THE SETTLEMENT ..................................................... 4

IV.     THE TERMS OF THE SETTLEMENT ................................................... 5

V.      ARGUMENT ................................................................................... 6

        A.      The Settlement Should be Preliminarily Approved .................... 6

                1.      The Settlement was Negotiated at Arm's-Length
                        and is Supported by Plaintiffs and Experienced Counsel ............ 7

                2.      The Settlement Terms are Fair,
                        Reasonable and Adequate Under the Grinnell Factors ............... 8

                        a)      Continued Litigation Would be
                                Complex, Expensive and Protracted ........................... 8

                        b)      Plaintiffs Have Sufficient Information
                                to Make an Informed Decision as to Settlement ............ 9

                        c)      Lead Plaintiffs Faced Significant
                                Risks in Establishing Liability and Damages ............... 10

                        d)      Risks of Maintaining Class Action Status Through Trial ....... 12

                        e)      Ability to Withstand Greater Judgment ..................... 12

                        f)      The Settlement Amount is in the Range of
                                Reasonableness in Light of the Best Possible
                                Recovery and all the Attendant Risks of Litigation ........ 13

        B.      The Settlement Class Should be Certified ............................. 13

                1.      Numerosity .............................................................. 14

                2.      Commonality ............................................................. 14

     3.    Typicality ...................................................................................... 14

     4.    Adequacy ...................................................................................... 14

     5.    Predominance of Common Questions
         and Superiority to Other Methods of Adjudication .................................... 14

  C.    The Form of Notice Should be Approved .............................................................. 13

     1.    The Proposed Schedule and Form of Notice ............................................. 14

     2.    The Proposed Method of Class Notice is Appropriate ............................. 19

VI.   CONCLUSION ..................................................................................................... 21

## TABLE OF AUTHORITIES

**CASES**                                                                  **Page(s)**

*In re Alloy, Inc. Securities Litigation,*
   No. 03 Civ. 1597, 2004 U.S. Dist. LEXIS 24129 (S.D.N.Y. Dec. 2, 2004) ............................ 10

*Amchem Products v. Windsor,*
   521 U.S. 591 (1997) ................................................................................................ 14, 17, 18

*In re American Medical Systems, Inc.,*
   75 F.3d 1069 (6th Cir. 1996) ............................................................................................ 15

*In re AOL Time Warner, Inc. Securities & "ERISA" Litigation,*
   No. 1500 MDL, 02 Civ. 5575, 2006 U.S. Dist. LEXIS 17588 (S.D.N.Y. Apr. 6, 2006) ....... 9, 10

*In re Baldwin-United Corp. Litigation,*
   122 F.R.D. 424 (S.D.N.Y. 1986) ....................................................................................... 16

*Bellifemine v. Sanofi-Aventis U.S. LLC,*
   No. 07 Civ. 2207, 2010 U.S. Dist. LEXIS 79679 (S.D.N.Y. Aug. 6, 2010) ............................ 10

*Buxbaum v. Deutsche Bank AG,*
   216 F.R.D. 72 (S.D.N.Y. 2003) ..................................................................................... 20, 21

*Chatelain v. Prudential-Bache Securities, Inc.,*
   805 F. Supp. 209 (S.D.N.Y. 1992) ..................................................................................... 12

*Cinelli v. MCS Claim Services, Inc.,*
   236 F.R.D. 118 (E.D.N.Y. 2006) ....................................................................................... 10

*City of Detroit v. Grinnell Corp.,*
   495 F.2d 448 (2d Cir. 1974) .................................................................................. 8, 10, 12, 13

*Consolidated Rail Corp. v. Town of Hyde Park,*
   47 F.3d 473 (2d Cir. 1995) ............................................................................................... 15

*Corner v. Cisneros,*
   37 F.3d 775 (2d Cir. 1994) ............................................................................................... 14

*County of Suffolk v. Long island Lighting Co.,*
   710 F. Supp. 1422 (E.D.N.Y. 1989), *aff'd,*
   907 F.2d 1295 (2d Cir. 1990) ............................................................................................ 14

*In re Currency Conversion Fee Antitrust Litigation,*
   MDL No. 1409, 2006 U.S. Dist. LEXIS 81440 (S.D.N.Y. Nov. 8, 2006) ................................ 7

iv

*D'Amato v. Deutsche Bank,*
   236 F.3d 78 (2d Cir. 2001) ................................................................................................12

*Denny v. Deutsche Bank AG,*
   443 F.3d 253 (2d Cir. 2006) ..............................................................................................13

*In re Drexel Burnham Lambert Group,*
   960 F.2d 285 (2d Cir. 1992) ..............................................................................................17

*Dura-Bilt Corp. v. Chase Manhattan Corp.,*
   89 F.R.D. 87 (S.D.N.Y. 1981) ...........................................................................................16

*Fait v. Regions Financial Corp.,*
   655 F.3d 105 (2d Cir. 2011) ..........................................................................................5, 11

*In re Global Crossing Securities & ERISA Litigation,*
   225 F.R.D. 436 (S.D.N.Y. 2004) ..........................................................................10, 12, 20

*Goldberger v. Integrated Resources, Inc.,*
   209 F.3d 43 (2d Cir. 2000) ...................................................................................................8

*Hicks v. Stanley,*
   No. 01 Civ. 10071, 2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 24, 2005) .................9

*In re Indus. Diamonds Antitrust Litigation,*
   167 F.R.D. 374 (S.D.N.Y. 1996) .......................................................................................16

*In re Initial Public Offering Securities Litigation,*
   226 F.R.D. 186 (S.D.N.Y. 2005) .........................................................................................6

*In re Initial Public Offering Securities Litigation,*
   243 F.R.D. 79 (S.D.N.Y. 2007) .........................................................................................15

*Marisol A. by Forbes v. Giuliani,*
   126 F.3d 372 (2d Cir. 1997) ........................................................................................15, 16

*In re Marsh & McLennan Securities Litigation,*
   No. 04 Civ. 8144, 2009 U.S. Dist. LEXIS 120953 (S.D.N.Y. Dec. 23, 2009) .................*passim*

*Masters v. Wilhelmina Model Agency, Inc.,*
   473 F.3d 423 (2d Cir. 2007) ..............................................................................................20

*In re Milken and Assoc. Securities Litigation,*
   150 F.R.D. 46 (S.D.N.Y. 1997) .........................................................................................11

*In re NTL, Inc. Securities Litigation,*
    No. 02 Civ. 3013, 2006 U.S. Dist. LEXIS 5346 (S.D.N.Y. Feb. 14, 2006)..............................15

*In re Omnicom Group, Inc. Securities Litigation,*
    597 F.3d 501 (2d Cir. 2010) ........................................................................................11

*In re Oxford Health Plans, Inc.,*
    191 F.R.D. 369 (S.D.N.Y. 2000)..................................................................................16

*In re PaineWebber Ltd. Partnerships Litigation,*
    171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd,*
    117 F.3d 721 (2d Cir. 1997) ........................................................................................11

*In re Prudential Insurance Co. of America Sales Practices Litigation,*
    962 F. Supp. 450 (D.N.J. 1997), *aff'd,*
    148 F.3d 283 (3d Cir. 1998) ........................................................................................20

*In re Saddle Rock Partners Ltd. v. Hiatt,*
    No. 96 Civ. 9474, 2000 U.S. Dist. LEXIS 11931 (S.D.N.Y. Aug. 21, 2000)..........................15

*In re Telik, Inc. Securities Litigation,*
    576 F. Supp. 2d 570 (S.D.N.Y. 2008) ...........................................................................7

*In re Traffic Exec. Association,*
    627 F.2d 631 (2d Cir. 1980) ........................................................................................7

*In re Veeco Instruments Inc. Securities Litigation,*
    No. 05 MDL 0165 (CM), 2007 U.S. Dist. LEXIS 85629 (S.D.N.Y. Nov. 7, 2007).................13

*In re Vivendi Universal S.A.,*
    242 F.R.D. 76 (S.D.N.Y. 2007)....................................................................................16

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
    396 F.3d 96 (2d Cir. 2005) ...................................................................................6, 9, 13

*Walsh v. Great Atlantic & Pacific Tea Co.,*
    726 F.2d 956 (3d Cir. 1983) ........................................................................................7

*In re Warfarin Sodium Antitrust Litigation,*
    391 F.3d 516 (3d Cir. 2004) ........................................................................................7

*Weinberger v. Kendrick,*
    698 F.2d 61 (2d Cir. 1982) ..........................................................................................13

## STATUTES & RULES

Federal Rules of Civil Procedure
    15(a) ........................................................................................................2
    23 ......................................................................................................*passim*
    23(a) ...........................................................................................13, 14, 15
    23(a)(3) ................................................................................................16, 18
    23(a)(4) ........................................................................................................17
    23(b) ...................................................................................................13, 14
    23(b)(3) ..............................................................................................*passim*
    23(c) ...........................................................................................................12
    23(c)(2) ......................................................................................................20
    23(c)(2)(B) .................................................................................................20
    23(e) .......................................................................................................6, 20
    23(e)(1) ................................................................................................19, 20
    30(b)(6) .......................................................................................................8
    59(e) ............................................................................................................2

Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a), *et seq.* .......21

SEC Rule 10b-5, 17 C.F.R. ¶ 240.10b-5 ...........................................................4

Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77(a), *et seq.* .....................3
    Section 12(a), 15 U.S.C. § 77*l*(a) ..................................................3, 18

Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78(a), *et seq.* ....................4

## OTHER AUTHORITIES

4 *Newberg on Class Actions*, §§ 11.22, *et seq.* (4th ed. 2002) .............................................6, 7, 14

## I.    INTRODUCTION

Lead Plaintiffs Daniel Brecher, Scott Short, Jennifer Murphy, Chad Taylor, Paul Koch and Mark Oelfke (collectively, the "Lead Plaintiffs") respectfully submit this memorandum of law in support of their request for the entry of an Order preliminary approving the proposed $8.5 million cash settlement as set forth in the Settlement,[1] certifying the Settlement Class, and approving the form and manner of notice to the members of the Settlement Class.   The Settlement satisfies all of the relevant legal standards for preliminary approval pursuant to Fed. R. Civ. P. 23, and is eminently fair and reasonable when the substantial recovery to the Settlement Class is balanced against the considerable risks and expenses attendant to further protracted litigation.   The Settlement results from intensive arm's length negotiations between the Lead Plaintiffs and Citigroup Inc. and Citigroup Global Markets, Inc. (collectively, the "Defendants"), and reflects a compromise based on Lead Plaintiffs' and Lead Counsel's knowledge of the strengths and weaknesses of the case gained through an extensive pre-complaint investigation, motion practice, consultations with experts, and voluminous discovery.

## II.    PROCEDURAL BACKGROUND AND SUBSTANTIVE ALLEGATIONS

### A.    Procedural Background

On March 24, 2009, Lead Plaintiffs Brecher and Short filed a class action in the United States District Court for the Southern District of California on behalf of all FA CAP participants whose shares of Citigroup stock – which they acquired through the FA CAP with their hard-earned wages and their valuable service to the Company – were rendered virtually worthless following Citigroup's disclosures concerning its liability for collateralized debt obligations

---

[1] All capitalized terms not otherwise defined herein shall carry the meaning set forth in the Stipulation and Agreement of Settlement, dated January 6, 2014 (the "Stipulation"), attached as Exhibit 1 to the notice of unopposed motion for preliminary approval filed contemporaneously with this memorandum of law.

("CDOs") collateralized mortgage obligations ("CMOs") and structured investment vehicles ("SIVs"), its questionable solvency, and other related issues.  On July 27, 2009 the United States District Court for the Southern District of California appointed the Lead Plaintiffs to represent all proposed Class members and appointed their counsel, Wolf Haldenstein Adler Freeman & Herz LLP, Lovell Stewart Halebian Jacobson LLP, Dostart Clapp & Coveney, LLP and Zamansky & Associates LLC, as Lead Counsel in the FA CAP Action.

On August 7, 2009, the Judicial Panel on Multidistrict Litigation transferred the FA CAP Action to this Court as related to the Securities Action.  Following transfer by the Panel, the Lead Plaintiffs filed an amended complaint on October 8, 2009.

Defendants moved to dismiss the FA CAP amended complaint on November 23, 2009, and the Court granted the motion on June 7, 2011.  Pursuant to Federal Rule of Civil Procedure 59(e), Lead Plaintiffs petitioned the Court for permission to file a second amended pleading under Federal Rule of Civil Procedure 15(a) to address the pleading insufficiencies identified in the June 7th Order.  On November 14, 2011, the Court vacated its prior judgment of dismissal and granted in part and denied in part Lead Plaintiffs' request for leave to amend.  On November 23, 2011, Lead Plaintiffs filed a conformed and amended complaint.

Discovery in the FA CAP Action commenced shortly thereafter.  On December 22, 2011, the parties in the FA CAP Action stipulated that they "would make all reasonable efforts to coordinate discovery in this action with the Securities Action and the Bond Action."  During the ensuing months, the parties to the FA CAP Action conducted substantial discovery.

On August 29, 2012, the parties to the Securities Action announced their agreement to settle that action – which also had the effect of settling the FA CAP Action – for a total of $590 million.  The parties filed a motion for preliminary approval and, later that same day, the Court

2

entered an Order preliminarily approving the proposed settlement in the Securities Action. Securities Action Dkt. Nos. 153 - 56.   On December 21, 2012, Lead Plaintiffs objected to the proposed settlement in the Securities Action, arguing, *inter alia*, that the Securities Act claims asserted in the FA CAP Action should not be released.   This Court agreed, and on July 12, 2013, issued an Order stating that release set forth in the proposed settlement in the Securities Action was too broad.   On July 24, 2013, the plaintiffs in the Securities Action filed a Second Amendment to Stipulation and Agreement of Settlement, which modified the release to exclude the Section 12 of the Securities Act claims asserted in the FA CAP Action.   On August 1, 2013, the Court entered a final judgment and dismissal with prejudice in the Securities Action.

In addition to objecting to the proposed settlement in the Securities Action, Lead Plaintiffs sought leave to file a third amended complaint on July 2, 2013.   Defendants opposed such motion on August 12, 2013 and Lead Plaintiffs filed their reply on September 11, 2013.

On October 14, 2013, after extensive investigation and litigation in this Action and the Securities Action, and after months of hard-fought negotiations, Lead Plaintiffs and the Defendants reached the Settlement.

**B.     Substantive Allegations**

The FA CAP complaint asserted claims under the federal securities laws as well as related Minnesota and California state law claims against Citigroup and various other named defendants.   In particular, Lead Plaintiffs alleged that Citigroup violated Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77*l*(a), by issuing materially false and misleading statements about Citigroup's financial and operating condition and prospects, including the Company's exposure to large losses on subprime mortgage-backed derivatives, CDOs, and mortgage-backed security originations.   These false and misleading statements were disseminated to FA CAP participants in various prospectuses for restricted or deferred shares of Citigroup common stock ("CAP

Shares") or a stock option ("CAP Option" and, collectively with CAP Shares, the "CAP Securities") through the Company's FA CAP.

The Amended Complaint also asserted claims under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. ¶ 240.10b-5, promulgated thereunder, alleging that Citigroup filed or made materially false and misleading public statements during the Class Period. Like Lead Plaintiffs' Section 12(a) claims, the Section 10(b) claims arose out of intentionally false and misleading statements concerning Citigroup's exposure to subprime risk in conjunction with the Company's CDOs, CMOs, and SIV investments. The Exchange Act claims were released as a consequence of the Securities Action settlement.

## III.    REASONS FOR THE SETTLEMENT

This Settlement provides substantial benefits to the Settlement Class, particularly when weighed against the risk that the Settlement Class might receive *zero* recovery had the Lead Plaintiffs elected to continue litigating this Action and had been defeated at either the motion to dismiss stage, class certification stage, the summary judge phase, at trial, or on appeal. Lead Plaintiffs and Lead Counsel believe that the $8.5 million all-cash Settlement is a highly favorable result for this complex litigation.

Plaintiffs' decision to settle this matter was fully informed and the product of Lead Counsel's rigorous prosecution of this matter over the course of more than four years. Specifically, in assessing whether the Settlement is in the best interest of the Settlement Class, the Lead Plaintiffs and Lead Counsel evaluated: (i) the merits of the parties' claims and defenses in light of their review of tens of millions of pages of documents produced by Defendants and numerous non-parties and the depositions of many of Defendants' witnesses; and (ii) the likelihood of defeating any *Daubert* or summary judgment motions, and prevailing

at trial.

Although the Lead Plaintiffs believe that the Defendants omitted material information concerning Citigroup's CDO exposure and valuation and other related financial metrics, Defendants have raised a host of factual and legal challenges increasing the uncertainty of a favorable outcome absent settlement.  Furthermore, Lead Plaintiffs faced increased pleading requirements under the Second Circuit's *Fait v. Regions Financial Corp.*, 655 F.3d 105 (2d Cir. 2011) opinion.  By settling the action now, Plaintiffs and the Settlement Class can ensure that compensation for their claims without assuming the risk of continued litigation.

Similarly, although Defendants deny Lead Plaintiffs' claims and contentions, they nevertheless have concluded that it is desirable to fully and finally resolve this litigation in the manner and on the terms set forth in the Stipulation. For Defendants, resolution of the Action limits further expense and inconvenience and eliminates the uncertainty and risks inherent in any litigation.  Thus, Defendants do not oppose this motion for preliminary approval of the proposed class action Settlement.

## IV.   THE TERMS OF THE SETTLEMENT

The Settlement resolves all of Lead Plaintiffs and the Settlement Class's claims against all Released Parties. *See* Stipulation at 10.  The Defendants have agreed to remit $8,500,000 to a Settlement Fund.  The Settlement Fund will be deposited into an interest-earning escrow account within ten business days following entry by the Court of the Preliminary Approval Order and will then earn interest until distributed to the Settlement Class.  Stipulation at 12.  The Settlement Fund will be distributed to FA CAP participants pursuant to a plan of allocation.

The Stipulation provides for the form and manner of class notice, the proof of claim procedures, the procedures by which potential Settlement Class members may seek exclusion or

object to any terms of the Settlement, and the procedure by which Lead Counsel will apply for attorneys' fees and reimbursement of expenses incurred in prosecuting this Action.

## V.     ARGUMENT

### A.     The Settlement Should be Preliminarily Approved

The law expresses a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116 (2d Cir. 2005) (internal citation and quotations omitted).

A court's review of a proposed class action settlement generally involves a two-step process: preliminary approval and a subsequent fairness hearing. *See In re Initial Pub. Offering Sec. Litig.,* 226 F.R.D. 186, 191 (S.D.N.Y. 2005) (citing *Manual for Complex Litigation, Fourth* § 21.632 (2004)). *See also* Fed. R. Civ. P. 23(e); 4 *Newberg on Class Actions, §§* 11.22, *et seq.* (4th ed. 2002).  At the preliminary approval stage, a court will review the proposed settlement and make an initial determination as to its fairness, reasonableness, and adequacy. "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *Initial Pub. Offering,* 226 F.R.D. at 191. These procedures safeguard class members' procedural due process rights and enable the court to fulfill its role as the guardian of class interests.

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged.") (citation omitted).  Further, preliminary approval should be granted "[w]here the

proposed settlement appears to be the product of serious, informed, non-collusive negotiation, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the reasonable range of approval." *In re Currency Conversion Fee Antitrust Litig.*, MDL No. 1409, 2006 U.S. Dist. LEXIS 81440, at *13 (S.D.N.Y. Nov. 8, 2006) (quoting *In re Nasdaq Market Makers Antitrust Litig*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)).  A settlement falls within the "range of possible approval" under Rule 23 if there is a conceivable basis for presuming that the standard applied for final approval will be satisfied.  The standard for final approval of a settlement is that the settlement is fair, adequate and reasonable to the class.  *Walsh v. Great Atl. & Pac. Tea Co.*, 726 F.2d 956, 965 (3d Cir. 1983).

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Newberg § 11.25.* To grant preliminary approval, a court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980). "Courts determine the fairness of a settlement by looking both at the terms of the settlement and the negotiation process leading up to it." *In re Telik, Inc. Sec. Litig.,* 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008). As detailed below, both the negotiation process and the terms of the Settlement support a finding of fairness. As such, preliminary approval is warranted.

### 1.   The Settlement was Negotiated at Arm's-Length and is Supported by Plaintiffs and Experienced Counsel

The Settlement was negotiated at arm's-length by counsel who are experienced in complex securities litigation and who were acting in an informed manner. The parties engaged in

extensive direct negotiations only after Lead Plaintiffs filed their reply brief in further support of their motion for leave to file a third amended complaint.

Lead Plaintiffs and Lead Counsel consider the proposed settlement to be an excellent outcome for the Settlement Class in light of their understanding of the Action's strengths and weaknesses. That understanding arises from Interim Lead Counsels': (i) rigorous pre-filing investigation; (ii) review of millions of pages of documents; (iii) a comprehensive Rule 30(b)(6) deposition concerning the mechanics and administration of the FA CAP; (iv) consultations with damages experts; and (v) analysis of the law applicable to the parties' claims and defenses. These circumstances give rise to a presumption of fairness.

### 2. The Settlement Terms are Fair, Reasonable and Adequate Under the Grinnell Factors

In order to determine whether the substantive terms of a settlement are fair, reasonable and adequate, courts in the Second Circuit apply the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).[2] An evaluation of these factors weighs in favor of preliminary approval of the proposed Settlement.

### a) Continued Litigation Would be Complex, Expensive and Protracted

Courts have consistently recognized that the complexity, expense and likely duration of litigation are critical factors in evaluating the reasonableness of a settlement, especially in a

---

[2] These factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell Corp.*, 495 F.2d at 463. Because the second *Grinnell* factor – the reaction of the class to the settlement – is only applicable at the "fairness hearing" stage, it is not addressed herein.

securities class action. *See, e.g., In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.,* No. 1500 MDL, 02 Civ. 5575, 2006 U.S. Dist. LEXIS 17588, at *24 (S.D.N.Y. Apr. 6, 2006); *Hicks v. Stanley,* No. 01 Civ. 10071, 2005 U.S. Dist. LEXIS 24890, at *12 (S.D.N.Y. Oct. 24, 2005).

Reaching a settlement at this juncture avoids the uncertainty of the pending motion to dismiss, class certification and summary judgment phases of the litigation, and, assuming Plaintiffs' success at these stages, a complex and costly trial, as well as all but certain appeals. Throughout this process Plaintiffs would face numerous hurdles such as compelling challenges to loss causation, and arguments that there were no actionable misrepresentations during the Class Period and no recoverable damages.

Moreover, even if Lead Plaintiffs were to prevail at all stages of the litigation, any potential recovery (in the absence of a settlement) would occur years in the future, substantially delaying payment to the Settlement Class. By contrast, the Settlement offers the opportunity to provide definite recompense to the Settlement Class now. *See Hicks,* 2005 U.S. Dist. LEXIS 24890, at *16 ("Further litigation would necessarily involve further costs; justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.")

b)   **Plaintiffs Have Sufficient Information<br>to Make an Informed Decision as to Settlement**

The third *Grinnell* factor, which looks to the "stage of the proceedings and the amount of discovery completed," *Wal-Mart,* 396 F.3d at 117, focuses on whether the plaintiffs "obtained sufficient information through discovery to properly evaluate their case and to assess the adequacy of any settlement proposal." *Bellifemine v. Sanofi-Aventis U.S. LLC,* No. 07 Civ. 2207, 2010 U.S. Dist. LEXIS 79679, at *9 (S.D.N.Y. Aug. 6, 2010). As noted above, the proposed Settlement follows voluminous discovery, including Plaintiffs' review of millions

9

of pages of documents and depositions of numerous key witnesses. Accordingly, this factor also supports approval of the Settlement.

c)   **Lead Plaintiffs Faced Significant Risks in Establishing Liability and Damages**

In analyzing Lead Plaintiffs' ability to establish Defendants' liability, the Court does not "need to decide the merits of the case or resolve unsettled legal questions." *Cinelli v. MCS Claim Servs., Inc.,* 236 F.R.D. 118, 121 (E.D.N.Y. 2006) (internal quotations and alterations omitted).  Rather, the Court weighs the likelihood of success on the merits against the relief provided by the Settlement. *See id.* Courts routinely approve settlements where plaintiffs would have faced significant legal and factual obstacles to establishing liability. *See In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 459 (S.D.N.Y. 2004).

In assessing the Settlement, the Court should balance the benefits afforded the Settlement Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation. *See Grinnell,* 495 F.2d at 463. Securities class actions present hurdles to proving liability that are difficult for plaintiffs to meet.  *See AOL Time Warner,* 2006 U.S. Dist. LEXIS 17588, at *39 (noting that "[t]he difficulty of establishing liability is a common risk of securities litigation"); *In re Alloy, Inc. Sec. Litig.,* No. 03 Civ. 1597, 2004 U.S. Dist. LEXIS 24129, at *6 (S.D.N.Y. Dec. 2, 2004) (finding that issues present in a securities action presented significant hurdles to proving liability).

While Lead Counsel believes that they would prove the Lead Plaintiffs' claims, they also recognize that they would face substantial hurdles. *First,* the Lead Plaintiffs would bear the burden of showing that the evidence they elicited during discovery was sufficient to establish their claims despite any credible defenses. Although Lead Counsel believe that the documentary and testimonial evidence would support Lead Plaintiffs' claims, there is no way to

10

determine without substantial additional litigation whether such evidence would withstand a summary judgment motion, and would convince a jury to accept their theory over Defendants' competing narrative. Among other factual defenses, Defendants likely would have argued that Citigroup's senior management: (i) believed that the risk of Super Senior losses was remote; (ii) selected a pricing model that they believed best reflected the Super Senior's value, and not because it minimized write-downs; and (iii) in any event, the allegedly misleading or omitted statements were not both false and not honestly believed at the time they were made under the Second Circuit's *Fait* requirements.

*Second*, the Lead Plaintiffs would also face the risk that they would be unable to prove damages. *See In re Milken and Assoc. Sec. Litig.,* 150 F.R.D. 46, 54 (S.D.N.Y. 1993) (approving settlement of a small percentage of the total damages sought because the magnitude of damages often becomes a "battle of experts . . . with no guarantee of the outcome"); *see also In re PaineWebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 129 (S.D.N.Y. 1997) *aff'd,* 117 F.3d 721 (2d Cir. 1997). To prevail on those issues, the Lead Plaintiffs would be required to prove with the assistance of an expert that Defendants' misleading and omissive statements damaged FA CAP participants. In addition, Defendants would likely have argued under Section 12 of the Securities Act that the depreciation in value of the subject security did not result from Defendants' wrongdoing, but from general market forces or other factors. *See* Section 12(b) of the Securities Act.

Defendants would counter with their own expert(s) and would challenge the validity of the Lead Plaintiffs' expert's report. *See, e.g., In re Omnicom Group, Inc. Sec. Litig.,* 597 F.3d 501 (2d Cir. 2010). At the summary judgment and/or *Daubert* motion stages, Defendants would likely also challenge Lead Plaintiffs' calculation of damages or argue that any decline

in Citigroup's stock price resulted from market, industry, or other non-case-related factors, such as the global financial crisis. Even if the Action were permitted to go to trial, it is not possible to determine which party's expert the jury would find more credible.

Accordingly, the proposed class faces a very real risk of no recovery, possibly after years of additional proceedings absent settlement. Conversely, the Settlement will provide tangible, certain and substantial relief to the proposed class now, "without subjecting them to the risks, complexity, duration, and expense of continuing litigation." *In re Global Crossing,* 225 F.R.D. at 456-57.

### d)      Risks of Maintaining Class Action Status Through Trial

Lead Counsel is confident that it would have obtained class certification and maintained that status through trial. Nonetheless, Defendants would likely have raised challenges to class certification, and may have moved to de-certify the Class before trial or on appeal at the conclusion of trial if a class had been certified. *See* Fed. R. Civ. P. 23(c); *Chatelain v. Prudential-Bache Securities, Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification. This factor indicates that settlement is advantageous to the class at this time."). Thus, this factor weighs in favor of the settlement of this Action at this time.

### e)      Ability to Withstand Greater Judgment

While there is no basis to believe that Defendants are incapable of withstanding a greater judgment, that factor alone is insufficient to defeat approval of the Settlement, especially where, as here, the other *Grinnell* factors weigh in support of approving the Settlement. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001) (the ability to withstand higher judgment, "standing alone, does not suggest that the settlement is unfair"); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 0165 (CM), 2007 U.S. Dist. LEXIS 85629, at *32 (S.D.N.Y. Nov. 7,

2007) (defendant's substantial net worth "alone does not prevent the Court from approving the Settlement where the other *Grinnell* factors are satisfied").

**f)      The Settlement Amount is in the Range of
Reasonableness in Light of the Best Possible
Recovery and all the Attendant Risks of Litigation**

The size of the Settlement provides support for its reasonableness when viewed in light of the best possible recovery and all of the risks of litigation. *See Wal-Mart,* 396 F.3d at 119 ("there is a range of reasonableness with respect to a settlement — a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion") (internal citation omitted).  Here, the Settlement provides up to 2% of plaintiffs' out of pocket loss, and a much greater percentage of their recoverable damages.  *See* Section 12(b) of the Securities Act.  Consequently, the size of the Settlement provides support for its reasonableness.

**B.      The Settlement Class Should be Certified**

In granting preliminary settlement approval, the Court should also certify the Settlement Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

It is well-settled that a court may certify a class for settlement purposes (*see Weinberger v. Kendrick,* 698 F.2d 61, 73 (2d Cir. 1982); *In re Marsh & McLennan Sec. Litig.,* No. 04 Civ. 8144, 2009 U.S. Dist. LEXIS 120953, at *14-15 (S.D.N.Y. Dec. 23, 2009)), provided that the court conducts an inquiry under Rules 23(a) and (b).   *See Denney v. Deutsche Bank AG,* 443 F.3d 253, 270 (2d Cir. 2006).   While a class generally must meet all of the requirements of Rule 23, "[s]ettlement is relevant to a class certification" and is "a factor in the calculus." *Amchem*

*Prods., Inc. v. Windsor,* 521 U.S. 591, 619, 622 (1997).[3]   This Court should make a determination that the proposed settlement class satisfies Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation, and at least one of the subsections of Rule 23(b); and provisionally certify the settlement class, and appoint Lead Counsel as Lead Class Counsel and the Lead Plaintiffs as class representatives.

Applying the allocations of the Settlement Amount developed for the Plan of Allocation, Class Members would receive $4.24 per share before Court-approved fees and expenses and costs of notice and claims administration.  *See* Plan of Allocation, Exhibit F to the Stipulation. This figure also assumes that every eligible Class Member asserts a valid claim. The actual claim rate is likely to be less than 100%, making the proportional recovery per claimant much higher.

As discussed below, all of the certification requirements for settlement purposes are met for this proposed settlement class, and Defendants consent to provisional certification (for settlement purposes only).  *See* Stipulation ¶ 13.[4]

### 1.    Numerosity

The numerosity requirement of Rule 23(a) is satisfied when a plaintiff can demonstrate the "the class is so numerous that joinder of all members is impracticable." *Corner v. Cisneros,* 37 F.3d 775, 796 (2d Cir. 1994) (quoting Fed. R. Civ. P. 23). In satisfying the numerosity requirement, "a plaintiff need not show that joinder is impossible. Nor need

---

[3] In determining whether to certify a settlement class, the manageability concerns of Rule 23(b)(3) are not at issue. *See Amchem,* 521 U.S. at 593.

[4] *See Newberg,* § 11.27 at 11-40 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only."); *County of Suffolk v. Long Island Lighting Co.,* 710 F. Supp. 1422, 1424 (E.D.N.Y. 1989); ("It is appropriate for the parties to a class action suit to negotiate a proposed settlement of the action prior to certification of the class."), *aff'd,* 907 F.2d 1295 (2d Cir. 1990).

the plaintiff know the exact number of class members." *Saddle Rock Partners Ltd. v. Hiatt*, No. 96 Civ. 9474, 2000 U.S. Dist. LEXIS 11931, at *6 (S.D.N.Y. Aug. 21, 2000) (citations omitted). Rather, while "[t]here is no strict numerical test for determining impracticability of joinder[,] . . . [w]hen class size reaches substantial proportions . . . the impracticability requirement is usually satisfied by the numbers alone." *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1079 (6th Cir. 1996). Courts have held that a class consisting of as few as forty members satisfies the numerosity requirement. *See, e.g.*, *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *In re NTL, Inc. Sec. Litig.*, No. 02 Civ. 3013, 2006 U.S. Dist. LEXIS 5346, at *18-19 (S.D.N.Y. Feb. 14, 2006).

Numerosity is readily established in this action. Lead Plaintiffs believe that the Settlement Class consists of many thousands of members. Thus, the numerosity requirement of Rule 23(a) is easily satisfied.

### 2.      Commonality

Rule 23(a)(2) requires that, in order for an action to be properly maintained as a class action, there must be questions of law or fact common to the class. The Second Circuit has held that the commonality requirement is satisfied if the named plaintiffs share at least one question of fact or law in common with the purported class. *See Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). Federal securities cases like this one easily meet the commonality requirement, which is satisfied where "putative class members have been injured by similar material misrepresentations and omissions." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 85 (S.D.N.Y. 2007). There are numerous questions of law or fact common to plaintiffs and the Settlement Class including: (a) whether the federal securities laws were violated by defendants' acts as alleged herein; (b) whether statements disseminated by defendants to

the investing public during the Class Period omitted and/or misrepresented material facts about Citigroup's business and operations; (c) whether defendants' statements were both false and not honestly believed at the time they were made; and (d) whether the members of the Settlement Class have sustained damages and, if so, what is the proper measure of such damages. These issues are prototypical examples of those which have been found to present "common questions" of law or fact meriting class certification.

### 3.   Typicality

Rule 23(a) requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement is readily satisfied where, as here, "the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members." *In re Vivendi Universal S.A.,* 242 F.R.D. 76, 85 (S.D.N.Y. 2007) (citation omitted); *see In re Oxford Health Plans, Inc.,* 191 F.R.D. 369, 375 (S.D.N.Y. 2000); *In re Baldwin-United Corp. Litig.,* 122 F.R.D. 424, 428 (S.D.N.Y. 1986). In this regard, the requirements of commonality and typicality tend to merge. *See Marisol A.,* 126 F.3d at 376. In essence, "[t]he crux of both requirements is to ensure that 'maintenance of a class action is economical and [that] the named plaintiffs claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Id.* (quoting *Gen. Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 157 n.13 (1982)). There is no requirement, however, that the claims of all members of a purported class be identical. *In re Marsh,* 2009 U.S. Dist. LEXIS 120953, at *32-33; *In re Indus. Diamonds Antitrust Litig.,* 167 F.R.D. 374, 379 (S.D.N.Y. 1996); *Dura-Bilt Corp. v. Chase Manhattan Corp.,* 89 F.R.D. 87, 99 (S.D.N.Y. 1981) (internal citations omitted).

The allegations in this case include a common course of unlawful conduct by the Defendants that affected all members of the Settlement Class identically.  The Lead Plaintiffs, like all who comprise the Settlement Class, acquired Citigroup shares and were damaged as a consequence of Defendants' alleged misrepresentations or concealment of Citigroup's CDO exposure.  The Lead Plaintiffs and their fellow Settlement Class members were all damaged in the same fashion as a consequence of the misstatements and omissions.  Accordingly, the Lead Plaintiffs' and the Settlement Class' interests are directly aligned and Lead Plaintiffs' claims are typical of the proposed Settlement Class.

### 4. Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interest of the class," and, like the other Rule 23 requirements, is easily met in the instant action.  Fed. R. Civ. P. 23(a)(4).  The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem,* 521 U.S. at 625 (citing *Falcon,* 457 U.S. 147, 157-58, n.13).  The requirement is met if it appears that: (1) the named plaintiffs' interests are not antagonistic to the class' interests; and (2) the named plaintiffs' attorneys are qualified, experienced, and generally able to conduct the litigation.  *See In re Drexel Burnham Lambert Group,* 960 F.2d 285, 291 (2d Cir. 1992); *In re Marsh,* 2009 U.S. Dist. LEXIS 120953, at *33.

Lead Counsel is eminently qualified, experienced and able to conduct this litigation. Each firm specializes in class action and complex securities litigation and has successfully prosecuted scores of actions on behalf of injured investors across the country.  Moreover, as discussed above, because Plaintiffs and the Settlement Class were injured by the same alleged misconduct, their interests and claims are coextensive.

### 5.    Predominance of Common Questions and Superiority to Other Methods of Adjudication

To certify a class under Rule 23(b)(3), a court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *In re Marsh*, 2009 U.S. Dist. LEXIS 120953, at *34. The Supreme Court has defined this inquiry as establishing "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. This inquiry is "similar" to Rule 23(a)(3)'s typicality requirement. *Id.* at 623 n.18. The Court added that "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Id.* at 625.

Here, the predominance requirement is easily satisfied. The essence of the Complaint is that Citigroup's disclosures concerning its Super-Senior CDO positions were misleading and omitted material information. Under these circumstances, Lead Plaintiffs' Section 12 claim under the Securities Act is susceptible of proof applicable to all class members. Lead Plaintiffs will prove each element of their claim through common evidence of Defendants' public statements and Citigroup's internal business practices and procedures.

Rule 23(b)(3) also sets forth the following non-exhaustive factors to be considered in making a determination of whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability . . . of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). Courts have recognized that the "class action is uniquely suited to resolving securities claims," because "the prohibitive cost of instituting individual actions" in such cases

gives class members "limited interest in individually controlling the prosecution or defense of separate actions." *In re Marsh,* 2009 U.S. Dist. LEXIS 120953, at *37.

The scope and complexity of the Lead Plaintiffs' claims against Defendants, together with the high cost of individualized litigation, make it unlikely that the vast majority of the Settlement Class Members would be able to obtain relief without class certification. Moreover, it is clearly desirable to concentrate the claims of all Settlement Class Members in this forum, and the Lead Plaintiffs do not foresee any difficulties in the management of this Action as a class action. Accordingly, the requirements of Rule 23(b)(3) are satisfied.

**C.      The Form of Notice Should be Approved**

**1.      The Proposed Schedule and Form of Notice**

If the Court preliminarily approves the Settlement, Lead Plaintiffs propose two forms of notice, a long form notice ("Notice") and a summary notice ("Summary Notice").  The Notice will be sent by mail to all identifiable Settlement Class Members at their last known address, and the Summary Notice will be published once in the national edition of *The Wall Street Journal* and issued electronically over the *PR Newswire*, an internet wire service for those Settlement Class Members whose addresses cannot be identified.  Substantively, the Notices: describe the Action and define the Settlement Class; describe the claims, defenses, and issues on which the parties disagree; notify Settlement Class Members of their rights to appear, object, and opt out; clearly explain the binding nature of the settlement; and set forth the plan of allocation pursuant to which the Net Settlement Fund will be allocated among Settlement Class Members.

**2.      The Proposed Method of Class Notice is Appropriate**

Rule 23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal," and the proposed form of notice

accomplishes this directive.  Fed. R. Civ. P. 23(e)(1).  The Second Circuit has held that the adequacy of a class action settlement notice is "measured by reasonableness." *Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423, 438 (2d Cir. 2007).  "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings. Notice is adequate if it may be understood by the average class member." *Id.* (internal citations omitted).

Rule 23(b)(3) also sets forth notice requirements for any class certified under Rule 23(b)(3) – under this Rule, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. Rule 23(c)(2)(B).  Where "the parties seek simultaneously to certify a settlement class and to settle a class action, the elements of Rule 23(c) notice (for class certification) are combined with the elements of Rule 23(e) notice (for settlement or dismissal)." *In re Global Crossing,* 225 F.R.D. at 448.  Rule 23(c)(2) requires the "best practicable notice," while Rule 23(e) requires notice that is "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 962 F. Supp. 450, 527 (D.N.J. 1997), *aff'd,* 148 F.3d 283 (3d Cir. 1998).  Neither Rule 23 nor due process requires actual notice to each possible class member. *See e.g.*, *In re Marsh,* 2009 U.S. Dist. LEXIS 120953, at *38-39; *Buxbaum v. Deutsche Bank AG,* 216 F.R.D. 72, 80-81 (S.D.N.Y. 2003).

Here, the proposed Notice satisfies Rule 23, and the PSLRA's statutory requirements.[5] Moreover, due process is satisfied because the notice program includes both individual notice and general publication. *See, e.g.,* 2009 U.S. Dist. LEXIS 120953, at *38-39; *Buxbaum,* 216 F.R.D. at 81. Because the Notice gives absent Settlement Class Members reasonable notices of their rights, the Court should approve it.

## VI.    CONCLUSION

For the reasons set forth in this memorandum, the Court should enter an order: (1) granting preliminary approval of the proposed Settlement; (2) conditionally certifying the Settlement Class for settlement purposes; (3) appointing Lead Counsel as Lead Class Counsel; (4) approving the parties' proposed form and method of giving notice of the pendency of this Action and the Settlement to the Settlement Class; (5) directing that notice be given to the Settlement Class members; and (6) scheduling a hearing at which the Court considers (a) the parties' request for final approval of the Settlement Class, the Settlement, the Plan of Allocation, and entry of the Judgment and (b) Lead Counsel's application for an award of attorneys' fees and reimbursement of expenses.

//

//

---

[5] These additional requirements are: (a) the amount of the settlement proposed to be distributed to the parties as determined in the aggregate and on an average per-share basis; (b) if the parties do not agree on the average amount of damages per share that would be recoverable in the event plaintiffs prevailed, as is the case here, a statement from each settling party concerning the issue(s) on which the parties disagree; (c) a statement indicating which parties or counsel intend to make an application for attorneys' fees and costs, the amount that will be sought, and a brief explanation in support of the request; (d) the name, telephone number, and address of one or more representatives of counsel for the Class who will be reasonably available to answer questions concerning any matter contained in the notice; (e) a brief statement explaining why the parties are proposing the settlement; and (f) such other information as may be required by the Court. 15 U.S.C. § 78u-4(a)(7).

Dated:  January 10, 2014

/s/ Matthew M. Guiney

JEFFREY G. SMITH
smith@whafh.com
MARK C. RIFKIN
rifkin@whafh.com
MATTHEW M. GUINEY
guiney@whafh.com
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**
270 Madison Ave.
New York, New York 10016
Tel:  212-545-4600
Fax: 212-545-4653

VICTOR E. STEWART (VS-4309)
FRED T. ISQUITH, JR. (FI-1064)
**LOVELL STEWART HALEBIAN
    JACOBSON LLP**
61 Broadway, Suite 501
New York, New York 10006
Tel: 212-608-1900
Fax: 212-719-4775

JAMES F. CLAPP
jclapp@sdlaw.com
**DOSTART CLAPP GORDON &
    COVENEY, LLP**
4370 La Jolla Village Drive, Suite 970
San Diego, California  92122-1253
Tel: 858-623-4200
Fax: 858-623-4299

EDWARD J. WYNNE
ewynne@wynnelawfirm.com
**WYNNE LAW FIRM**
100 Drakes Landing Road, Ste. 275
Greenbrae, CA 94904
Tel:  415-461-6400
Fax: 415-461-3900

JACOB H. ZAMANSKY
jake@zamansky.com
EDWARD H. GLENN, JReglenn@zamansky.com

KEVIN D. GALBRAITH
kevin@zamansky.com
**ZAMANSKY & ASSOCIATES LLC**
50 Broadway, 32nd Floor
New York, New York 10004
Tel: 212-742-1414
Fax: 212-742-1177

*Lead Counsel for Lead Plaintiffs and the Class*