```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  5/20/14
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE CITIGROUP INC.
SECURITIES LITIGATION

09 MD 2070 (SHS)

---

DANIEL BRECHER, SCOTT SHORT,
CHAD TAYLOR, JENNIFER MURPHY,
PAUL KOCH, and MARK OELFKE,
individually and on behalf of all others
similarly situated,

This document relates to:

09 Civ. 7359 (SHS)

Plaintiffs,

-against-

OPINION & ORDER

CITIGROUP INC. and CITIGROUP
GLOBAL MARKETS INC.,

Defendants.

---

SIDNEY H. STEIN, U.S. District Judge.

Plaintiffs acquired common stock or stock options in Citigroup Inc. through Citigroup's Financial Analyst Capital Accumulation Program ("FA CAP") in the period leading up to the subprime meltdown of the last decade. They have sued Citigroup Inc. and its subsidiary, Citigroup Global Markets Inc., for securities fraud. They allege on behalf of a class of FA CAP participants that Citigroup misled investors by understating the risks associated with assets backed by subprime mortgages and overstating the value of those assets. The parties have agreed to settle their dispute for $8.5 million to be paid to the class. That settlement represents a significant recovery, especially in light of the substantial challenges plaintiffs face were they to litigate this action to verdict. Accordingly, this Court finds that the settlement is fair, reasonable, and adequate.

I. BACKGROUND

Plaintiffs' claims center on Citigroup's investment in, and exposure to, risks associated with investments backed by subprime mortgages. According to plaintiffs, Citigroup misled its FA CAP participants about the extent of that exposure, downplaying its liability for collateralized debt obligations ("CDOs"), collateralized mortgage obligations ("CMOs"), and structured investment vehicles ("SIVs"). When this action was commenced in the Southern District of California in 2009, plaintiffs alleged that these false and misleading statements violated Section 12(a)(2) of the Securities Act of 1933, 15 U.S.C. § 77l; Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); and SEC Rule 10b-5, 17 C.F.R. ¶ 240.10b-5.

Since then, the parties have engaged in wide-ranging pretrial litigation: the Judicial Panel on Multidistrict Litigation transferred the action to this Court; defendants moved to dismiss the complaint, resulting in an order of dismissal with prejudice; after further motion practice, the Court vacated and amended the resulting judgment in order to provide plaintiffs leave to replead; plaintiffs repleaded by filing a Second Amended Complaint; defendants moved to dismiss the Second Amended Complaint; these parties, in concert with the parties in related actions in this multidistrict litigation, began discovery proceedings; and lead counsel fought vehemently against a settlement in a related action that would have released plaintiffs' claims in this action.

Specifically, a proposed settlement in *In re Citigroup Inc. Securities Litigation*, No. 07 Civ. 9901 (SHS), threatened to substantially diminish FA CAP plaintiffs' recovery. Although that proposed settlement sought to release FA CAP plaintiffs' claims, it calculated their losses using a single-day share price instead of using average prices over specific time periods. The average price method would have been more favorable to FA CAP plaintiffs. Due in part to lead counsel's objection to that proposed settlement, the final settlement of *In re Citigroup Inc. Securities Litigation*

involved a carve-out for the Section 12(a)(2) claims of FA CAP plaintiffs, leaving them unreleased.

On October 14, 2013, the parties in this action agreed to a settlement. (*See* Stipulation & Agreement of Settlement, Jan. 6, 2014 (Dkt. No. 50 Ex. 1).) Broadly speaking, the settlement awards $8.5 million to plaintiffs (*id.* ¶ 1(bb), at 12); defines a settlement class of FA CAP participants who "acquired Citigroup common stock and/or options to acquire Citigroup common stock during the period between November 1, 2006 and June 30 2009, inclusive, . . . and who were damaged thereby" (*id.* ¶ 1(cc), at 12); and releases all related FA CAP claims against defendants (*id.* ¶¶ 14-17, at 22).

This Court preliminarily approved the settlement on January 10, 2014 (Dkt. No. 48.) The claims administrator subsequently sent notice to 7,409 class members by first-class mail, postage prepaid. (Fraga Aff. ¶¶ 2-5, Apr. 9, 2014 (Dkt. No. 57 Ex. 1).) It further effected notice by publication. (*Id.* ¶ 8.) The notice included the details of class certification, the settlement, and the plan of allocation that creates tranches of FA CAP awards based on their vesting dates. (*Id.* Ex. A.) The notice also set forth instructions to request exclusion from the class and how to object to the settlement. (*Id.* Ex. A ¶¶ 58-62.) Not a single class member filed an objection, and just one individual requested exclusion from the class. (Fraga Aff. ¶¶ 10-11.)

## II. THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE.

### A. The Standard for Approving a Proposed Class Action Settlement

Settlement of a class's claims requires court approval. Fed. R. Civ. P. 23(e). "A court may approve a class action settlement if it is 'fair, adequate, and reasonable, and not a product of collusion.'" *Wal-Mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)); *see also In re Citigroup Inc. Secs. Litig.*, 965 F. Supp. 2d. 369, 380-83 (S.D.N.Y. 2013). The Court must exercise its

3

discretion to approve or reject a settlement in light of the general judicial policy favoring settlement. *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *see also Wal-Mart Stores*, 396 F.3d at 116. Nonetheless, the Court must consider the settlement's fairness in order to "serve as a 'fiduciary' to protect the interests of absent class members affected by the settlement." *McBean v. City of New York*, 233 F.R.D. 377, 382 (S.D.N.Y. 2006) (quoting *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 22 (2d Cir. 1987)).

The Court first assesses "the negotiating process, examined in light of the experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves." *Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir. 1983). The Court then considers the "substantive terms of the settlement compared to the likely result of a trial." *Id.*; *see also In re Citigroup Inc. Secs. Litig.*, 965 F. Supp. 2d. at 381-83.

### B. Procedural Fairness

The first indicator of a settlement's fairness is whether it was negotiated at arm's length. "As long as the integrity of the negotiating process is ensured by the Court, it is assumed that the forces of self-interest and vigorous advocacy will of their own accord produce the best possible result for all sides." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 132 (S.D.N.Y. 1997), *aff'd* 117 F.3d 721 (2d Cir. 1997). These negotiations took place at arm's length between capable counsel who were familiar with the litigation. Having observed counsel at various stages throughout this litigation, the Court is confident in counsel's professional abilities and effective advocacy for their clients. The Court therefore concludes that the settlement process was fair and free from collusion and that a presumption of the settlement's fairness arises.

### C. Substantive Fairness

The next step in the Court's analysis involves "consider[ing] whether the substantive terms of the settlement support or rebut the presumption

4

of fairness arising from the arm's-length negotiations." *In re Citigroup Secs. Litig.*, 965 F. Supp. 2d at 381. This step uses the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), namely:

(1) the complexity, expense and likely duration of the litigation;
(2) the reaction of the class to the settlement;
(3) the stage of the proceedings and the amount of discovery completed;
(4) the risks of establishing liability;
(5) the risks of establishing damages;
(6) the risks of maintaining the class action through the trial;
(7) the ability of the defendants to withstand a greater judgment;
(8) the range of reasonableness of the settlement fund in light of the best possible recovery;
(9) the range of reasonableness of the settlement fund [compared] to a possible recovery in light of all the attendant risks of litigation.

*Wal-Mart Stores*, 396 F.3d at 117 (quoting *Grinnell*, 495 F.2d at 463). In weighing the *Grinnell* factors, "[t]he Court must eschew any rubber stamp approval in favor of an independent evaluation, yet, at the same time, it must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Grinnell*, 495 F.2d at 462.

*First*, "[a]s a general matter, the more complex, expensive, and time consuming the future litigation, the more beneficial settlement becomes as a matter of efficiency to the parties and to the Court." *McBean*, 233 F.R.D. at 385. The complexity in this action, if litigated to a verdict, looms large. Expert discovery and summary judgment and pretrial motions, as well as an extended trial and a possible appeal all would lie ahead and all would consume vast resources. Approval of this settlement will avoid that extended and costly litigation.

*Second*, the class has uniformly reacted positively to the settlement. "If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *Wal-Mart Stores*, 396 F.3d at

5

118 (quoting Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11:41, at 108 (4th ed. 2002)). Out of 7,409 class members to whom notice of this settlement was sent, not a single one objected and only one requested exclusion. This positive reaction weighs heavily in favor of approval of the settlement.

*Third*, the proceedings are sufficiently advanced that "plaintiffs entered into the settlement only after a thorough understanding of their case." *Wal-Mart Stores*, 396 F.3d at 118. The parties have been litigating this action for nearly five years and have had extensive discovery concerning their adversaries' case. Plaintiffs and their lead counsel are therefore well-positioned to make an informed prediction about the likelihood of success at trial and an informed valuation of their claims.

*Fourth*, *fifth*, and *sixth* are the factors that "concern the obstacles plaintiffs face[] in pursuing a final judgment in their favor." *In re Citigroup Inc. Secs. Litig.*, 965 F. Supp. 2d at 382. "If settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp 917, 934 (S.D.N.Y. 1969). Plaintiffs' success in this action is far from a foregone conclusion. In addition to the usual challenges inherent in proving securities fraud, plaintiffs' continued litigation must surmount further substantial defenses here: (1) that Citigroup's CDOs had extended seniority and therefore came with lower risks than other subprime mortgage-backed investments; (2) that defendants were (as other market actors) ignorant of certain risks inherent in subprime mortgage-backed investments and therefore did not knowingly mislead investors; and (3) that the historic market collapse in 2008—rather than any misstatements or omissions in prospectuses—caused plaintiffs' losses.

These defenses to plaintiffs' recovery are especially daunting in light of *Fait v. Regions Financial Corp.*, 655 F.3d 105 (2d Cir. 2011), in which the U.S. Court of Appeals for the Second Circuit held that investor-plaintiffs' fraud allegations required the complaint to "plausibly allege that

6

defendants did not believe the statements . . . at the time they made them," rather than merely allege that "adverse market conditions [] support the contention that defendants should have reached different conclusions." *Id.* at 112; *see also Omaha Civilian Employees' Retirement Sys. v. CBS Corp.*, 679 F.3d 64, 67-68 (2d Cir. 2012) (noting that the holding in *Fait* applies to fraud claims under both the Securities Act of 1933 and the Securities Exchange Act of 1934). Even if plaintiffs could demonstrate liability despite these obstacles, "the magnitude of damages becomes a battle of experts at trial, with no guarantee of the outcome in the eyes of the jury," *In re Milken & Assocs. Secs. Litig.*, 150 F.R.D. 46, 54 (S.D.N.Y. 1993), further justifying a settlement that covers simply a fraction of plaintiffs' actual losses. The settlement provides the class with a definite and immediate recovery, which might elude plaintiffs altogether if they proceeded to trial.

*Seventh*, if a settlement leaves defendants unable to withstand a greater judgment, then the settlement is the best possible outcome for the class. But if the settlement does not exhaust defendants' resources, then "this factor, standing alone, does not suggest that the settlement is unfair." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001). In this case, absolutely nothing in the record suggests that a judgment greater than $8.5 million would challenge defendants' solvency. It would be fanciful in the extreme to even suggest it. Where a defendant is among the world's largest financial institutions and plaintiffs are individual investors, this factor does not assist in assessing the fairness of the settlement.[1]

*Eighth* and *ninth*, essential to analyzing a settlement's fairness is "the need to compare the terms of the compromise with the likely rewards of litigation." *Weinberger*, 698 F.2d at 73 (quoting *Protective Comm. for Indep.*

---

[1] According to *Forbes*'s most recent "Global 2000" list, Citigroup is the world's sixteenth largest public company and the eighth largest in the United States, with $1.9 trillion in assets. *See* The World's Biggest Public Companies, *Forbes,* May 2014 (*available at* http://www.forbes.com/global2000/list).

*Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968)). The Second Circuit has emphasized that "[t]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart Stores*, 396 F.3d at 119 (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). The $8.5 million cash settlement falls squarely within this range of reasonableness. Lead counsel estimates that this settlement fund represents two percent of the class's out-of-pocket loss. (Mem. of Law in Support of Mot. for Final Approval of Class Action Settlement, filed Mar. 14, 2014 (Dkt. No. 53) at 21.) The many uncertainties discussed above result in the class facing a distinct risk of recovering nothing. In light of the best possible recovery and the risks of continued litigation, this settlement provides the class a fair recovery.

*Altogether*, these factors strongly suggest that the settlement is fair, adequate, and reasonable, and the Court concludes that the class's recovery of $8.5 million is substantively fair.

### III. THE PLAN OF ALLOCATION IS FAIR, ADEQUATE, AND REASONABLE.

A district court's analysis of a class settlement extends to the fairness, reasonableness, and adequacy of the plan of allocation. *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 157-58 (S.D.N.Y. 2013); *see also In re Am. Int'l Grp., Inc. Secs. Litig.*, 293 F.R.D. 459, 466 (S.D.N.Y. 2013). "When formulated by competent and experienced counsel, a plan of allocation of net settlement proceeds need have only a reasonable, rational basis." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y. 2012).

Lead counsel have proposed a plan of allocation that distributes the class's recovery in a way that fairly reflects class members' relative losses. This plan, as explained in the notice to class members (Fraga Aff. Ex. A ¶¶ 45-47), creates five tranches based upon the five FA CAP vesting dates during the class period. The distinctions between the tranches' loss

8

calculations are based upon several variables: (1) the interest rate applied to the purchase amount, as defined by the weekly U.S. Treasury Bill rate from the date of the FA CAP award through March 24, 2009; (2) for FA CAP equity shares, the dividends paid on Citigroup common stock from the date of the FA CAP award through March 24, 2009; and (3) for FA CAP options, the options' expiration date to the extent it affected the options' value at the end of the class period. This plan of allocation is fair, adequate, and reasonable.

## IV. CONCLUSION

This action features complex allegations by a relatively small class of investors, subject to significant uncertainty at trial and on appeal. The class received notice of the settlement and had an opportunity to object to it: the thousands of class members remained ubiquitously and unanimously silent. The settlement procedurally and substantively vindicates the interests of the class.

The Court finds that the proposed $8.5 million settlement is fair, reasonable, and adequate. The Court further finds that the class was provided with adequate notice of class certification and the settlement. The Court therefore grants plaintiffs' motion for final approval of the settlement and plan of allocation.

Dated: New York, New York
May 20, 2014

SO ORDERED:

Sidney H. Stein, U.S.D.J.